**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

VICTORIA SCHWEIZER,

Plaintiff,

v. No. 25-cv-01302 MLG/JFR

AUTOSAVVY OF SANTA FE, LLC, and
JOE COSTALES, *in his capacity as agent for AutoSavvy of Santa Fe, LLC*,

Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion to Remand to State Court* ("*Motion to Remand*") (Doc. 10). Having reviewed the parties' submissions, the record, and the applicable law, and being otherwise fully advised, the undersigned recommends, for the reasons set forth herein, that the *Motion to Remand* (Doc. 10) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends that the Court order remand but deny Plaintiff's request for attorney's fees and costs.

## I. FACTUAL BACKGROUND

The Court has construed the below facts from Plaintiff's Complaint, Doc. 1-1 at 1-5, and the documents attached thereto, *see id.* at 6-68.

On July 24, 2020, Plaintiff's ex-husband, Clifford Heikes ("Heikes"), entered a contract with MINI Financial Services regarding a 2020 MINI Cooper SE Countryman ("Mini Cooper").

---

[1] In accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), United States District Judge Matthew L. Garcia referred this matter to the undersigned on June 3, 2026, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition. Doc. 24.

*See id.* at 64 (listing date of contract); *id.* at 37-38 (first instance in the Complaint's exhibits identifying Heikes as Plaintiff's ex-husband). On July 10, 2022, Heikes signed a notarized State of Colorado Power of Attorney for Motor Vehicle Only that designated Plaintiff as his agent to take certain actions pertaining to the Mini Cooper. *See id.* at 11.

On October 27, 2023, Plaintiff went to AutoSavvy in Santa Fe, New Mexico, looking to trade in the Mini Cooper for a used 2020 Toyota Prius ("Prius"). *Id.* at 3. After fees, the Prius cost $22,163.00. *See id.* at 8. *But see id.* at 20 (Bill of Sale, listing the "Exact Sale Amount" as $13,957.38). At that time, $16,599.58 was owed on the Mini Cooper, *see id.* at 13, 24, and it was valued at a trade-in allowance of $26,000.00, *see id.* at 7, 19, 25. Thus, there was $9,400.42 in equity on the Mini Cooper. *See id.* at 7. Plaintiff intended to use this equity as a down payment on the Prius, *see id.* at 6, and to finance the remaining $12,762.58, *see id.* at 6, 7.

Based on Plaintiff's representations, she was allowed to leave with the Prius after signing the necessary paperwork, but the deal was contingent on Plaintiff being approved for financing. *See id.* at 25 (Spot Delivery Agreement acknowledging that "this transaction is conditioned upon final financing approval by a third party lender . . . ."). This paperwork included (listed in the order attached to the Complaint): (1) the Retail Installment Sale Contract - Simple Finance Charge (with Arbitration Provision) ("RISC"), *id.* at 6-10 (capitalization altered); (2) Application for Vehicle Title and Registration, *id.* at 19 (capitalization altered); (3) Bill of Sale, *id.* at 20-21; (4) Notice of Salvage Certificate or Branded Title, *id.* at 22; (5) Combination Trade-In Notice & Payoff Authorization, *id.* at 24 (capitalization altered); (6) Spot Delivery Agreement, *id.* at 25 (capitalization altered); (7) Consent to Do Business Electronically, *id.* at 26; (8) Limited Durable Power of Attorney, *id.* at 27 (capitalization altered); (9) Application for Duplicate Certificate of

Title, *id.* at 28 (capitalization altered); and (10) Affidavit of One and the Same Name, *id.* at 29 (capitalization altered).

On October 27, 2023, AutoSavvy submitted a credit request of $20,056.58 to Mountain America Federal Credit Union ("MACU"). *See id.* at 12 ("Date: 10/27/2023"). *But see id.* at 41-42 ("I reached out in the last week of Nov 2023 when I received a letter from BMW That the payments were late it wasn't until then that I became aware that AutoSavvy did not close the transaction. . . . It wasn't till after that date you ran my credit for $20,000."). Plaintiff also claims that an amount of approximately $29,000 was requested but has provided no further details nor supporting documentation to discuss. *See id.* at 3; *id.* at 58 ("I later reached out to [MACU] and they confirmed that Auto Savvy ran my credit for 20,0568.68 and again for 29,000."); *id.* at 60 ("I've asked them to remove the hard credit pull and denial that was fraudulent [sic] applied for on my behalf in the amounts of 20 and 29 thousand . . . ."); *see also id.* at 66 (email by a MACU Loan Servicing Representative explaining that "the [credit] application was officially denied on 11/28/2023," and "[t]he amount*s* that were ran were not by MACU request, *they* were by the request of Auto Savvy." (emphasis added)).

At some point in "late November" Plaintiff "received a notice from BMW financial [that] [her] payment was late. [She] immediately reached out to BMW financial [and] provided them with [her] closing documents and they stated that AutoSavvy [sic] didn't close the deal and [that Plaintiff] needed to follow up with them." *Id.* at 58. On November 21, 2023, Plaintiff emailed AutoSavvy to inquire why the Mini Cooper had not been paid off. *Id.* at 30.

On November 28 and 29, 2023, Plaintiff exchanged a series of texts with an AutoSavvy representative. *See id.* at 31-38. In short, Plaintiff was informed that the loan/financing could not be completed because Plaintiff lacked clear and free title on the Mini Cooper. *See id.* at 31,

32, 34, 36. Therefore, Plaintiff was repeatedly asked to return the Prius to AutoSavvy, upon which she would be returned the Mini Cooper. *See id.* at 31, 32, 36. However, Plaintiff was informed that if she wished to proceed with the trade in, then she would need to bring Heikes to AutoSavvy so he could complete the actions necessary. *See id.* at 37. Otherwise, Plaintiff could only proceed through a deal that did not involve the trade-in. *See id.* at 37-38.

In December 2023, *see id.* at 51, 58, Plaintiff received a letter dated November 28, 2023, from MACU denying credit in the amount of $20,056.58, *id.* at 12; *see also id.* at 66 (affirming that the denial was Nov. 28, 2023). On January 25, 2024, Plaintiff submitted a complaint against MACU with the Consumer Financial Protection Bureau ("CFPB"). *See id.* at 50-56.

On February 5, 2024,[2] Joe Costales, the general manager[3] of the Santa Fe AutoSavvy initiated and exchanged a series of texts with Plaintiff. *See id.* at 39-43. Mr. Costales claimed that Plaintiff had neither brought in a check with the difference owed as she promised, nor had Heikes visited an AutoSavvy location to complete the necessary documents. *Id.* at 39. Therefore, AutoSavvy needed the Prius returned. *Id.* After Plaintiff responded, *see id.* at 41-43, Plaintiff was informed that the matter had been "escalated to [AutoSavvy's] upper management," and that someone would follow up "with what [AutoSavvy's] next steps w[ould] be," *id.* at 43. On February 20, 2024, AutoSavvy followed up explaining that a deal could be reached under the conditions specified on November 29, 2023, and that if the deal were going to go through, these conditions would need to be completed no later than February 23, 2024. *See id.* at 43-45. Otherwise, Plaintiff could drop off the Prius and retrieve the Mini Cooper. *Id.* at 45. After

[2] The Court reasonably infers that Costales' text was sent on February 5, 2024, because the screenshots attached to the Complaint appear to show a single, continuous text thread. *See generally* Doc. 1-1 at 31-49. Assuming no texts are missing from that thread, the partially cut-off date preceding Costales' text can only be read as "Mon, Feb 5." *See id.* at 38. This detail, however, is ultimately immaterial to the analysis conducted herein.

[3] For completeness, the Court notes that Costales' employment with AutoSavvy ended May 2, 2024. Doc. 17-1 ¶ 2.

Plaintiff telephonically spoke with AutoSavvy on February 26, 2024, *see id.* at 47 ("[W]e must have got disconnected."), she was informed that AutoSavvy would "not be extending any more opportunity to complete a deal," that AutoSavvy would send a demand letter to the address on file, and that a recovery truck would be dispatched if the Prius was not returned by February 28, 2024. *See id.* at 47-48.

On February 28, 2024, the amount due on the Mini Cooper increased to $16,650.22, *see id.* at 62, and MINI Financial Services sent a recovery driver to Plaintiff's home to retrieve the Mini Cooper, *id.* at 58. Plaintiff informed the recovery driver that she traded the Mini Cooper in to AutoSavvy. *Id.* About an hour later, the recovery driver returned to Plaintiff's house "to show [her] that they had retrieved the [M]ini [Cooper] out of a back portion of Auto[S]avvy's lot." *Id.* On February 29, 2024, MINI Financial Services issued Heikes a Notice of Our Plan to Sell Property. *Id.* at 64-65 (capitalization altered).

On March 6, 2024, AutoSavvy sent Alert Towing to repossess the Prius from Plaintiff's home. *Id.* at 58. On March 7, 2024, Plaintiff submitted a complaint against AutoSavvy to the State of New Mexico Department of Justice ("NM DOJ"). *Id.* at 57-61.

## II. PROCEDURAL BACKGROUND

On November 21, 2025, Plaintiff, proceeding *pro se*, filed a Civil Complaint for Damages and Other Relief ("Complaint") in the First Judicial District Court, County of Santa Fe, State of New Mexico. *See generally* Doc. 1-1. The Complaint asserts five causes of action for "Fair Credit Reporting Act Violations," "Conversion," "Breach of Fiduciary Duty," "Breach of Contract," and "Fraud and Deceptive Trade Practices," with no further reference to any statutory or common law basis. *See id.* at 4.

AutoSavvy was served on November 25, 2025. Doc. 1 ¶ 2. On December 23, 2025, AutoSavvy removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Doc. 1.

On December 26, 2025, Plaintiff made five filings in state court (listed in the order they appear on the state court docket), which this Court did not receive and docket until January 7, 2026: (1) *Plaintiff's Motion for Leave to File First Amended Complaint* ("*Motion for Leave to Amend*") (Doc. 9); (2) *Motion to Remand* (Doc. 10) (raising fraudulent joinder of Defendant Costales); (3) *Notice to State Court of Federal Removal and Request that [State] Court Retain Jurisdiction* ("*Notice to State Court*") (Doc. 13); (4) *Emergency Motion for Temporary Restraining Order and Preliminary Injunction* ("*Emergency Motion*") (Doc. 11); and (5) *Request for Expedited Hearing on Motion for Leave to Amend* (Doc. 12).

On December 31, 2025, AutoSavvy filed its *Motion to Compel Arbitration and Stay Instant Proceeding Pending Completion of Arbitration* ("*Motion to Compel Arbitration*") (Doc. 7). On January 7, 2026, Plaintiff filed her Response in opposition. Doc. 14.

On January 8, 2026, the undersigned denied Plaintiff's *Motion for Leave to Amend* (Doc. 9) without prejudice for failure to attach a proposed amended complaint as required by D.N.M.LR-Civ. 15.1, and denied the *Request for Expedited Hearing on Motion for Leave to Amend* (Doc. 12) as moot. Doc. 16 at 1-2. The undersigned set January 21, 2026, as the deadline for AutoSavvy to respond to Plaintiff's *Motion to Remand* (Doc. 10), *Emergency Motion* (Doc. 11), and *Notice to State Court* (Doc. 13), and to reply to its *Motion to Compel Arbitration* (Doc. 7). Doc. 16 at 3. Having reset those deadlines, the Court clarified that Plaintiff could reply to her *Motion to Remand* (Doc. 10) and *Emergency Motion* (Doc. 11) within fourteen days of AutoSavvy's responses. *Id.* In addition, the undersigned cautioned Plaintiff,

under FED. R. CIV. P. 11, regarding numerous instances of her filings (specifically Docs. 9, 10, 11, 13, and 14) containing citations that do not exist, fabricate quotations, or do not support the propositions for which they are cited, and warned Plaintiff that continued submission of such authority could result in sanctions. *See id.* at 3-7.

On January 21, 2026, AutoSavvy made four filings: (1) its Response opposing Plaintiff's *Motion to Remand* (Doc. 10), Doc. 17; (2) its Reply supporting its *Motion to Compel Arbitration* (Doc. 7), Doc. 18; (3) its Response opposing Plaintiff's *Notice to State Court* (Doc. 13), Doc. 19; and (4) its Response opposing Plaintiff's *Emergency Motion* (Doc. 11), Doc. 21.

On February 5, 2026, AutoSavvy filed a Notice of Completion of Briefing regarding its *Motion to Compel Arbitration* (Doc. 7). Doc. 22. To date, Plaintiff never filed replies supporting her *Motion to Remand* (Doc. 10) or *Emergency Motion* (Doc. 11). Therefore, briefing is presumed complete. *See* D.N.M.LR-Civ. 7.1(b) ("The failure to file and serve a reply in support of a motion within the time prescribed for doing so constitutes consent that briefing on the motion is complete."); *see also* D.N.M.LR-Civ. 7.4(a) ("A reply must be served and filed within fourteen (14) calendar days after service of the response. These time periods are computed in accordance with FED. R. CIV. P. 6(a) and (d) and may be extended by agreement of all parties.").

On February 6, 2026, AutoSavvy filed a Supplemental Notice of Removal to assert federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's *Motion to Remand* (Doc. 10) and Response (Doc. 14) to the *Motion to Compel Arbitration* clarified, for the first time, that her previously unspecified "Fair Credit Reporting Act" claim, *see* Doc. 1-1 at 1, 4, was brought under the federal statute. Doc. 23.

## III. LEGAL STANDARDS

### A. Removal, Diversity Jurisdiction, and Fraudulent Joinder

An action is removable from state court if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). The party invoking federal jurisdiction bears the burden of establishing that removal was proper, and courts strictly construe the removal statutes, resolving doubts against removal. *See Fajen v. Found. Rsrv. Ins.*, 683 F.2d 331, 333 (10th Cir. 1982). The two statutory bases for federal subject matter jurisdiction are federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under 28 U.S.C. § 1332. Because "[f]ederal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree," *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted), a motion to remand for lack of subject-matter jurisdiction may be brought at any time, 28 U.S.C. § 1447(c).

Diversity jurisdiction requires that: (1) the parties have complete diversity of citizenship (that is, no plaintiff is a citizen of the same state as any defendant, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806), *overruled on other grounds by Louisville, Cin. & Charleston R.R. v. Letson*, 43 U.S. (2 How.) 497 (1844)); and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). The Tenth Circuit Court of Appeals has defined "amount in controversy" as an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). If a plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is "deemed to be the amount in controversy . . . ." 28 U.S.C. § 1446(c)(2). As for the diversity of citizenship requirement—also called the "forum defendant

rule"—an action may not be removed "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction. *See Am. Nat'l Bank & Tr. Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991). The "defendant seeking removal bears a heavy burden of proving fraudulent joinder . . . ." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quotation marks omitted) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2nd Cir. 1998)). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." *Couch v. Astec Indus., Inc.*, 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999) (citing *McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956)). Moreover, "all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (quotation marks omitted) (quoting *Pampillonia*, 138 F.3d at 461).

"A fraudulent joinder analysis is a jurisdictional inquiry, and, thus, the Tenth Circuit instructs that the district court should pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1158 (D.N.M. 2015) (quotation marks, citations, and brackets omitted).

The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith . . . ." *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914). Likewise, the Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of

a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished).

To add further complication, there is little binding precedent—*see generally Dutcher v. Matheson*, 733 F.3d 980 (10th Cir. 2013); *Smoot v. Chi., Rock Island & Pac. R.R.*, 378 F.2d 879 (10th Cir. 1967); *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82 (10th Cir. 1964)—and "the Tenth Circuit has issued seemingly conflicting standards regarding the burden to establish a fraudulently joined defendant in two unpublished decisions: *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592 (10th Cir. 2000) (unpublished table decision); and *Nerad v. AstraZeneca Pharm., Inc.*, 203 Fed. App'x 911 (10th Cir. 2006) (unpublished)." *Whitby v. State Farm Fire & Cas. Co.*, No. 23-CV-00073, 2023 WL 11763365, at *2 (N.D. Okla. Aug. 21, 2023) (internal citations modified). The Tenth Circuit's assertion of potentially conflicting standards has resulted in inconsistent application amongst district courts in this circuit. *See id.* at *3 ("Because of these seemingly conflicting standards, at least one federal district court has observed that it is not entirely clear what the removing party must prove in order to demonstrate a plaintiff's inability to establish a cause of action. Other district courts within the Tenth Circuit, while referencing *Smoot* and *Dodd*, appear to conflate the *Montano* and *Nerad* standards and do not recognize a distinction." (quotation marks, citations, and brackets omitted)); *Davis v. State Farm Fire & Cas. Co.*, No. 25-cv-00448, 2026 WL 880234, at *4 n.6 (N.D. Okla. Mar. 30, 2026) ("Some courts consider th[e] [*Nerad*] standard as compatible with that in *Montano*. Others have treated *Montano* and *Nerad* as inherently incompatible." (citations omitted)). The limited on-point caselaw is summarized below.

In *Dodd* (1964), the Tenth Circuit stated two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham," 329 F.2d at 85 (citing *Parks v. N.Y. Times Co.*, 308 F.2d 474 (5th Cir. 1962)), and (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists," *id.* (citing *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958)). However, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.* (citing *McLeod*, 233 F.2d 242). In reaching such a determination, the *Dodd* court instructed courts to, where fraudulent joinder is alleged, look beyond the pleadings to determine if a cause of action exists against a non-diverse defendant. *See id.*

In *Smoot* (1967), the Tenth Circuit largely reiterated the standards set forth in *Dodd*. *See* 378 F.2d at 882. However, the Tenth Circuit concluded that a defendant was fraudulently joined since the non-liability of the non-diverse defendant had been "established with complete certainty *upon undisputed evidence* . . . ." *Id.* (emphasis added).

In *Montano* (2000), the Tenth Circuit held that a party asserting fraudulent joinder must demonstrate the plaintiff has "no possibility of recovery" against a non-diverse defendant. 2023 WL 11763365 at *4. The standard announced in *Montano* "is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6); indeed, the [Rule 12(b)(6) standard] entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Id.* at *2 (first citing *Batoff v. State Farm Ins.*, 977 F.2d 848, 851-53 (3rd Cir. 1992), and then citing *Green v. Amerada Hess Corp.*, 707 F.2d 201, 207 (5th Cir. 1983)).

In *Nerad* (2006), the Tenth Circuit held in dicta that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 Fed. App'x at 913. Under *Nerad*, the "reasonable basis" standard does not require the claim to be a "sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id.*

In *Brazell* (2013), the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (unpublished) (first citing *Dodd*, 329 F.2d at 85, and then citing *Roe v. Gen. Am. Life Ins.*, 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In *Dutcher* (2013), in its first published opinion regarding fraudulent joinder since 1967, the Tenth Circuit explained that "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988 (alteration in original) (quotation marks omitted) (quoting *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)). However, the Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder, except to say that it is "a high hurdle." *Id.* at 989.

**B. <u>Plaintiff's *Pro Se* Status</u>**

In addition to the aforementioned standards, the Court notes that Plaintiff's filings were prepared without the assistance of counsel. Generally:

> *pro se* litigants are held to the same standards of professional responsibility as trained attorneys. It is a pro se litigant's responsibility to become familiar with and to comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of New Mexico (the "Local Rules").

Guide for Pro Se Litigants at 4, U.S. DIST. CT. DIST. OF N.M. (Oct. 2022); *see also Representing Yourself (Pro Se)*, U.S. DIST. CT. DIST. OF N.M., https://www.nmd.uscourts.gov/representing-yourself-pro-se (last accessed Aug. 6, 2026) (providing links to the Pro Se Guide, Federal Rules of Civil Procedure, and Local Rules). Although Plaintiff must comply with the fundamental rules of procedure, *see Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), it has long been the rule that *pro se* pleadings are construed with a greater degree of liberality than those of a trained attorney, *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *Id.* at 1110. However, it is inappropriate for a court to assume the role of an advocate and read into a complaint for facts or legal theories that are simply not present there. *Id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

## IV. ANALYSIS

Since Plaintiff's *Motion to Remand* (Doc. 10) challenges the Court's subject matter jurisdiction, the undersigned first addresses that motion. *See infra* Section IV.A; *Kokkonen*, 511 U.S. at 377. Because the undersigned concludes that AutoSavvy has not met its "heavy burden" in showing that Costales was fraudulently joined, *see infra* Section IV.B.2, and that it's Supplemental Notice of Removal is procedurally defective, *see infra* Section IV.C, the undersigned recommends that this matter be remanded and thus does not address the other pending motions. *See* Doc. 7 (AutoSavvy's *Motion to Compel Arbitration*); Doc. 11 (Plaintiff's *Emergency Motion*). Lastly, the undersigned recommends that Plaintiff's request for attorney fees and costs be denied. *See infra* Section IV.D.

### A. The Parties' Arguments

Plaintiff filed the *Motion to Remand* on January 7, 2026. Doc. 10. In sum, Plaintiff argues that diversity of citizenship does not exist because: (1) Costales is a "properly-joined New Mexico defendant," *id.* at 2; *see id.* at 3-5; (2) Plaintiff sought leave to amend her complaint to add MACU, which she argues destroys diversity jurisdiction because it is "a Utah credit union," *id.* at 2; *see id.* at 5-6; (3) the amount in controversy "does not clearly exceed $75,000," *id.* at 2, because after considering treble damages calculated on Plaintiff's "actual compensatory damages," *id.* at 6, is "barely above threshold and subject to statutory reduction," *id.* at 7; (4) federal courts should be reluctant to decide unsettled issues of state law and this case requires at least some interpretation of New Mexico law, *see id.* at 7; and (5) "[h]aving chosen to conduct predatory lending in New Mexico, AutoSavvy must face accountability in New Mexico courts," *id.* at 7. Additionally, Plaintiff asks the Court to award "her costs and reasonable attorney's fees" under 28 U.S.C. § 1447(c), "including compensation for Plaintiff's pro se work" at the rate of $350 per hour. Doc. 10 at 8.

AutoSavvy filed its Response on January 21, 2026. Doc. 17. Therein, AutoSavvy argues that remand is unwarranted because: (1) the amount in controversy exceeds $75,000.00 because (a) "[t]he very first page of [Plaintiff's] complaint states she is seeking $250,000 in damages," *id.* at 2, and (b) in presently arguing a lower amount in damages, Plaintiff acknowledges that the amount in controversy was "barely above" $75,000.00, *id.*; (2) adding MACU as a defendant would not destroy diversity because "[d]iversity still exists if two defendants are citizens of the same state," *id.* at 3; (3) Costales is a fraudulently joined party because (a) Plaintiff's Complaint did not contain any cause of action against Costales or allege his residency, and the fact that Plaintiff added Costales' name to the standardized New Mexico Civil Complaint form does not

resolve that fact, *id.* at 4-5, (b) Plaintiff's claims arise from the RISC between Plaintiff and AutoSavvy, *id.* at 5, as further evidenced by Plaintiff's complaints with the CFPB and NM DOJ, *id.* at 5-6, and (c) the record appears to show that the only summons issued were to AutoSavvy and that Plaintiff has not attempted to serve Costales, *id.* at 6; (4) Plaintiff incorrectly asserts that AutoSavvy must show that Plaintiff has "no possibility" of recovery against Costales and that because "Plaintiff did not state *any* cause of action against Costales . . . the Court does not need to reach whether a cause of action *could* be stated," *id.* at 6-7 (emphasis in original); (5) the Court can resolve questions of state law, *id.* at 7; (6) Plaintiff's *Motion to Remand* indicated that the Complaint involves a question of federal law, which gives the Court another basis to retain jurisdiction, *id.* at 7-9. Additionally, AutoSavvy requests its attorney's fees and costs incurred in responding to the *Motion to Remand*. *Id.* at 9.

Plaintiff did not reply and briefing is presumed complete. *See* D.N.M.LR-Civ. 7.1(b).

**B. <u>Diversity Jurisdiction Does Not Exist</u>**

The threshold question for the Court's determination is whether diversity jurisdiction—the only basis asserted in AutoSavvy's Notice of Removal—exists. *See* 28 U.S.C. § 1332.

To begin, the amount in controversy requirement is easily met because "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy," 28 U.S.C. § 1446(c)(2), and Plaintiff's Complaint demanded "the amount of $250,000 and also claims interest and court costs." Doc. 1-1 at 1. The fact that Plaintiff now asserts a lower amount makes no difference. *See* Doc. 10 at 6-7. Nevertheless, as Plaintiff concedes, the lower amount in controversy she now argues still exceeds $75,000.00. *See id.* at 7 ("Even with treble damages: $29,400 x 3 = $88,200—barely above threshold and subject to statutory reduction.").

Turning to the diversity in citizenship requirement, the Court finds that it has not been met. To begin, Plaintiff is a citizen of New Mexico. *See* Doc. 1-1 at 1; *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state."). AutoSavvy is a Utah LLC wholly owned by a single member, AutoSavvy Holding, Inc., *see* Doc. 1-4 at 1, 3, a Delaware-incorporated corporation, *see id.* at 1, 5, with its principal place of business in Utah, *see id.* at 3. Therefore, for purposes of diversity jurisdiction AutoSavvy is a citizen of Utah and Delaware. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015) ("Supreme Court precedent makes clear that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members."); *see also* 28 U.S.C § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). Even if Plaintiff were granted leave to add MACU as a defendant, which she alleges is a Utah citizen, *see* Doc. 10 at 2, 5, that would not destroy diversity of citizenship because Plaintiff is not a Utah citizen. *See Strawbridge*, 7 U.S. at 267.

The trouble arises, however, in considering Costales' citizenship. Although Plaintiff did not allege Costales' citizenship in her Complaint, *see* Doc. 1-1 at 1-5, she now alleges that he is a citizen of New Mexico, Doc. 10 at 3. Therefore, the Court must consider whether Costales is a nominal party whose citizenship may be disregarded for purposes of diversity jurisdiction or whether Plaintiff fraudulently joined Costales. *See Brazell*, 525 F. App'x at 880-81.

1. **<u>Assuming *Montano* and *Nerad* Are Incompatible, the Undersigned Applies *Montano* Here</u>**

Because some courts consider *Nerad* and *Montano* compatible, while others do not, the undersigned turns to an analysis of the approach taken by the presiding judge on the issue of

fraudulent joinder in other matters. *See Whitby*, 2023 WL 11763365, at *3; *Davis*, 2026 WL 880234, at *4 n.6. The undersigned has identified only two applicable opinions: (1) *Carlisle & I-40, LLC v. Whole Foods Mkt. Rocky Mountain/Sw., L.P.*, No. 23-CV-00784, 2023 WL 9117471 (D.N.M. Dec. 6, 2023) (Garcia, J.); and (2) *Harris v. Nabors Drilling Techs. USA, Inc.*, No. 24-cv-00331, --- F. Supp. 3d ---, 2025 WL 48548 (D.N.M. Jan. 8, 2025) (Garcia, J.).

In *Carlisle*, the presiding judge applied "the high threshold [of] show[ing] that there is no possibility of a viable cause of action against [the purportedly fraudulently-joined defendant] in state court," and cited *De La Rosa*, 113 F. Supp. 3d at 1160-61 with the parenthetical characterization that it "analyz[ed] the *proper* standard for fraudulent joinder[.]" *Carlisle*, 2023 WL 9117471, at *2 (emphasis added); *see also id.* at *1 (citing *Montano*, 2000 WL 525592, at *1). In *Harris*, the presiding judge concluded that a defendant was fraudulently joined where it was "impossible for Plaintiffs to establish a claim against [that defendant] in state court." *Harris*, 2025 WL 48548, at *5; *see also id.* at *2 (citing *Montano*, 2000 WL 525592, at *1).

In light of these conclusions, the undersigned similarly applies the standard announced in *Montano*. That is to say, AutoSavvy must demonstrate that Plaintiff has "no possibility of recovery" against Costales. *See Montano*, 2023 WL 11763365 at *4.

**2. <u>AutoSavvy Has Not Met Its Heavy Burden in Showing Fraudulent Joinder</u>**

AutoSavvy relies on the Tenth Circuit precedent "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham." Doc. 17 at 3 (quotation marks and citation omitted). Without addressing the pleading issues of Plaintiff's Complaint, the applicable standard under *Montano* is "more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6) . . . ." *Montano*, 2023 WL 11763365 at *4. Put differently, while true that fraudulent joinder "can occur when the plaintiff joins a 'resident defendant against whom no cause of action

is stated,'" such failure must be "to prevent removal under a federal court's diversity jurisdiction," *Brazell*, 525 F. App'x at 881 (quoting *Dodd*, 329 F.2d at 85), which goes to the requirement that a removing defendant make a "showing . . . [that] compels the conclusion that the joinder is without right and made in bad faith . . . ." *Chesapeake & Ohio Ry. Co.*, 232 U.S. at 152. To move the needle from insufficient pleadings to bad faith, the Tenth Circuit requires the removing party to demonstrate the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court," *Dutcher*, 733 F.3d at 988 (quotation marks and citation omitted), which requires "clear[ing] the high threshold [of] show[ing] that there is no possibility of a viable cause of action against [Costales] in state court," *Carlisle*, 2023 WL 9117471, at *2. To the extent that there may be legal ambiguity in framework and procedure, "all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988 (quotation marks omitted) (quoting *Pampillonia*, 138 F.3d at 461).

That said, AutoSavvy has not met its "heavy burden of proving fraudulent joinder . . . ." *Id.* Before proceeding further, the undersigned emphasizes that "[t]he objective" of this analysis "is not to pre-try the merits of the plaintiff's claims." *Brazell*, 525 F. App'x at 881. Therefore, it is enough to note that agents are generally liable for torts committed while engaged in work for the benefit of a principal. *See* RESTATEMENT (THIRD) OF AGENCY § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."); *see also id.* cmt. b, illus. 5 (agent liable for conversion that benefitted principal even though agent "did not derive a direct personal benefit from the converted funds"). Because Costales' actions could plausibly subject him to liability notwithstanding his role as General Manager for AutoSavvy, the

Court concludes fraudulent joinder is not readily apparent and AutoSavvy has not met its heavy burden in proving such.

### C. The Amended Notice of Removal is Not Procedurally Proper

Because the undersigned concludes that diversity jurisdiction has not been established—the sole basis for removal originally invoked, *see* Doc. 1 at 1—the Court must now resolve whether AutoSavvy's Supplemental Notice of Removal is procedurally proper. *See* Doc. 23. In sum, as AutoSavvy explains:

> Plaintiff's Complaint in the State Court Action [Doc. 1-1] alleges that Defendants violated the "Fair Credit Reporting Act," but Plaintiff did not provide any citation or indication that she intended to bring a claim under 15 U.S.C. § 1681 *et seq*. Since New Mexico has a similarly named statute—the "Fair Credit Reporting and Identity Security Act," NMSA 1978, § 56-3A-1 et seq.—AutoSavvy could not determine whether Plaintiff was seeking relief under state or federal law.
>
> . . . .
>
> [However,] [o]n January 7, 2026, Plaintiff filed [her *Motion to Remand* (Doc. 10) and Response (Doc. 14) to AutoSavvy's *Motion to Compel Arbitration*] that indicate for the first time that she intends to bring a claim under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

Doc. 23 ¶¶ 2-3. While the undersigned agrees that Plaintiff has now clearly established her intent to assert a federal claim, the Court cannot *sua sponte* assert this jurisdictional basis; there must be a procedurally proper basis for removal.

AutoSavvy relies on 28 U.S.C. § 1446(b)(3), *see* Doc. 23 ¶¶ 1, 5, which reads in its entirety as follows:

> Except as provided in subsection (c), *if the case stated by the initial pleading is not removable*, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that *the case is one which is or has become removable*.

28 U.S.C. § 1446(b)(3) (emphasis added). Evidently, this subsection's application is limited to instances where a case is not otherwise removable. *See id.* Here, the case was purportedly removable on diversity jurisdiction grounds. *See* Doc. 1. Thus, 28 U.S.C. § 1446(b)(3) is not a proper basis to support an amended removal notice.

Turning to the idea of amendment more generally, the Tenth Circuit allows parties to amend a deficient notice of removal, as appropriate.

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

*Bailey v. Markham*, 611 F. Supp. 3d 1177, 1212 (D.N.M. 2020) (quoting 14 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3733, at 651-59 (4th rev. ed. 2019)). Because AutoSavvy's Supplemental Notice of Removal asserts a new jurisdictional basis, it is not a recognized acceptable basis for amending a removal notice. *See* Doc. 23 ¶ 2 ("[T]he only basis for removal stated in AutoSavvy's [original] Notice of Removal [Doc. 1] was diversity jurisdiction." (bracketed citation in original)). AutoSavvy has neither presented authority showing that an exception exists (nor is the undersigned aware of any) or made argument sufficient for the Court to justify distinguishing precedent.

For the foregoing reasons, the undersigned finds that there is not a procedurally proper removal notice. Without a procedurally proper notice of removal that asserts an applicable basis for jurisdiction, the Court cannot proceed in exercising its authority. Therefore, the undersigned recommends that Plaintiff's *Motion to Remand* (Doc. 10) be granted in part, insomuch that the Court should order remand.

**D. <u>The Court Should Deny Plaintiff's Request of Attorney Fees and Costs</u>**

Plaintiff seeks an award of attorney fees and costs incurred in connection with the removal and her *Motion to Remand* under 28 U.S.C. § 1447(c). Doc. 10 at 8-9. Notwithstanding that pro se litigants generally cannot recover attorney's fees, the Court is unaware of binding caselaw explicitly precluding an award of fees and costs under 28 U.S.C. § 1447(c), and AutoSavvy does not point to any.

However, even assuming Plaintiff were able to recover fees, the undersigned finds that it is unwarranted here. Given the ambiguities arising from properly drafted pleadings and relatively unclear applicable precedent, the undersigned finds AutoSavvy's removal was not unreasonable. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 132 (2005) ("Absent unusual circumstances, attorney's fees should not be awarded under § 1447(c) when the removing party has an objectively reasonable basis for removal. Conversely, where no objectively reasonable basis exists, fees should be awarded."). Therefore, the undersigned recommends that the parties shoulder their own expenses. "All things considered," doing so will "reflect[ ] a legitimate exercise of the Court's discretion, is faithful to the purposes of fee awards under § 1447(c), and is properly 'supported by [ ] circumstance[s] [ ] relevan[t] to the issue at hand.'" *Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec.*, 798 F. Supp. 2d 1265, 1272 (D.N.M. 2011) (sub-quote alterations in original) (quoting *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196, n. 8 (1995)).

For these reasons, the undersigned recommends that Plaintiff's *Motion to Remand* (Doc. 10) be denied in part, but only with respect to her request for attorney fees and costs.

## V. RECOMMENDATIONS

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that the Court **GRANT IN PART AND DENY IN PART** *Plaintiff's Motion to Remand to State Court* (Doc. 10). Specifically, the undersigned recommends that the Court order remand but deny Plaintiff's request for attorney's fees and costs.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**